UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARLOS LEVAUGHN THOMPSON,

       Petitioner,

    v.                             CASE NO. 2:20-CV-11988
                                       HON. GEORGE CARAM STEEH

CONNIE HORTON,

       Respondent.

_____/

## OPINION & ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, & DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

**I.**   **Introduction**

Michigan prisoner Carlos Levaughn Thompson ("petitioner"), through counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting that he is being held in violation of his constitutional rights.  The petitioner was convicted of two counts of first-degree criminal sexual conduct, Mich. Comp. Laws § 750.520b, following a jury trial in the Macomb County Circuit Court and was sentenced to concurrent terms of 35 to 80 years imprisonment in 2017.  In his pleadings, he raises claims concerning the trial court's deadlocked jury instructions,

-1-

the effectiveness of trial counsel as to that issue, and the conduct of the

prosecutor.  For the reasons stated herein, the court denies the habeas

petition.  The court also denies a certificate of appealability and denies

leave to proceed in forma pauperis on appeal.

## II.    Facts and Procedural History

The petitioner's convictions arise from his sexual assault of his

girlfriend's seven-year-old daughter at a residence in Macomb County,

Michigan.  The Michigan Court of Appeals described the underlying facts,

which are presumed correct on habeas review, see 28 U.S.C. § 2254(e)(1);

Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> On two occasions, defendant sexually assaulted his girlfriend's
> then seven-year-old daughter. On those occasions, defendant's
> girlfriend left her two children in defendant's care. Defendant
> would order the one child to stand in the corner of the living
> room while he sexually assaulted the other child in the
> second-floor bedroom. Eventually, the victim told her aunt
> about the sexual assaults. Although a physical examination did
> not reveal any sexual-related trauma, defendant was arrested
> and charged with two counts of CSC-I following a forensic
> interview.

People v. Thompson, No. 339103, 2018 WL 6710597, *1 (Mich. Ct. App.

Dec. 20, 2018) (unpublished).

Following his convictions and sentencing, the petitioner filed an

appeal of right with the Michigan Court of Appeals raising the same claims

presented on habeas review.  The court denied relief on those claims and affirmed his convictions and sentences.  Id. at *1-6.  The petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied.  People v. Thompson, 503 Mich. 1037, 927 N.W.2d 255 (2019).

The petitioner thereafter filed his federal habeas petition.  He raises the following claims:

> I.    He was denied a fair trial under the 5th and 14th Amendments to the U.S. Constitution when the jury declared it was deadlocked and the trial court judge responded with her own comments that were not only materially different from the required deadlocked jury instructs, but were also coercive and forced the jury to reach a verdict.
>
> II.   He was denied a fair trial under the 5th, 6th, and 14th Amendments to the U.S. Constitution when defense counsel failed to object to the trial court judge's reading of the non-standard deadlocked jury instruction.
>
> III.  The prosecutor violated the 5th and 14th Amendments to the U.S. Constitution during closing argument by suggesting to the jury that a guilty verdict would help the victim heal from the sexual assault.

The respondent has filed an answer to the petition contending that it should be denied.

### III.   Standard of Review

Federal law imposes the following standard of review for habeas

cases:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not
> be granted with respect to any claim that was adjudicated on
> the merits in State court proceedings unless the adjudication of
> the claim –
>
> (1)   resulted in a decision that was contrary to, or
>        involved an unreasonable application of, clearly
>        established Federal law, as determined by the
>        Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an
>        unreasonable determination of the facts in light of
>        the evidence presented in the State court
>        proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' ... clearly established law if it

'applies a rule that contradicts the governing law set forth in [Supreme

Court cases]' or if it 'confronts a set of facts that are materially

indistinguishable from a decision of [the Supreme] Court and nevertheless

arrives at a result different from [that] precedent.'" Mitchell v. Esparza, 540

U.S. 12, 15-16 (2003) (per curiam) (quoting Williams v. Taylor, 529 U.S.

362, 405-06 (2000)); see also Bell v. Cone, 535 U.S. 685, 694 (2002).

-4-

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." <u>Wiggins v. Smith</u>, 539 U.S. 510, 520 (2003) (quoting <u>Williams</u>, 529 U.S. at 413); <u>see also</u> <u>Bell</u>, 535 U.S. at 694.  However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'" <u>Wiggins</u>, 539 U.S. at 520-21 (citations omitted); <u>see also</u> <u>Williams</u>, 529 U.S. at 409.  "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" <u>Renico v. Lett</u>, 559 U.S. 766, 773 (2010) (quoting <u>Lindh</u>, 521 U.S. at 333, n. 7; <u>Woodford v. Viscotti</u>, 537 U.S. 19, 24 (2002) (per curiam)).

A state court's determination that a claim lacks merit "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." <u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011) (citing <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004)).

The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)).  Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court.  Id.  Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Id.; see also White v. Woodall, 572 U.S. 415, 419-20 (2014).  Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong."  Woods v. Donald, 575 U.S. 312, 316 (2015).  A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable.  Woods v. Etherton, 576 U.S. 113, 118 (2016).

Section 2254(d)(1) limits a federal habeas court's review to a

determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision.  Williams, 529 U.S. at 412; see also Knowles v. Mirzayance, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting Wright v. Van Patten, 552 U.S. 120, 125-26 (2008) (per curiam)); Lockyer, 538 U.S. at 71-72.  Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"  Harrington, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8 (2002); see also Mitchell, 540 U.S. at 16.

The requirements of clearly established law are to be determined solely by Supreme Court precedent.  Thus, "circuit precedent does not constitute 'clearly established Federal law as determined by the Supreme

Court'" and it cannot provide the basis for federal habeas relief.  Parker v. Matthews, 567 U.S. 37, 48-49 (2012) (per curiam); see also Lopez v. Smith, 574 U.S. 1, 2 (2014) (per curiam).  The decisions of lower federal courts, however, may be useful in assessing the reasonableness of the state court's resolution of an issue.  Stewart v. Erwin, 503 F.3d 488, 493 (6th Cir. 2007) (citing Williams v. Bowersox, 340 F.3d 667, 671 (8th Cir. 2003)); Dickens v. Jones, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review.  See 28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption with clear and convincing evidence.  Warren v. Smith, 161 F.3d 358, 360-61 (6th Cir. 1998).  Lastly, habeas review is "limited to the record that was before the state court."  Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

## IV.   Analysis

### A.   Procedural Default

As an initial matter, the respondent contends that some of the petitioner's habeas claims are barred by procedural default.  The court declines to address this defense.  Procedural default is not a jurisdictional bar to habeas review.  Howard v. Bouchard, 405 F.3d 459, 476 (6th Cir.

2005).  Moreover, federal courts on habeas review "are not required to address a procedural-default issue before deciding against the petitioner on the merits."  Hudson v. Jones, 351 F.3d 212, 215 (6th Cir. 2003) (citing Lambrix v. Singletary, 520 U.S. 518, 525 (1997)).  The Supreme Court has explained the rationale behind such a policy:  "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."  Lambrix, 520 U.S. at 525.  Such is the case here.  The procedural issue is complex, somewhat intertwined with the merits of certain claims, and the substantive claims are more readily decided on the merits.  Accordingly, the court shall proceed to the merits of the claims.

### B.    Merits

#### 1.    Deadlocked Jury Instruction Claim

The petitioner first asserts that he is entitled to habeas relief because the trial court erred in instructing the jury when it was deadlocked.  The respondent contends that this claim is procedurally defaulted, is not cognizable, and lacks merit.

In order for habeas relief to be warranted on the basis of incorrect

-9-

jury instructions, a petitioner must show more than the instructions are undesirable, erroneous or universally condemned. Rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. Estelle v. McGuire, 502 U.S. 62, 72 (1991); Henderson v. Kibbe, 431 U.S. 145, 154 (1977). If an instruction is ambiguous and not necessarily erroneous, it violates the Constitution only if there is a reasonable likelihood that the jury applied the instruction improperly. Binder v. Stegall, 198 F.3d 177, 179 (6th Cir. 1999). A jury instruction is not to be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. Jones v. United States, 527 U.S. 373, 391 (1999); Grant v. Rivers, 920 F. Supp. 769, 784 (E.D. Mich. 1996). The failure to give an instruction that is supported by the evidence does not automatically justify habeas relief – the failure to instruct must have rendered the trial fundamentally unfair. Cupp v. Naughten, 414 U.S. 141, 147 (1973); Daniels v. Lafler, 501 F.3d 735, 741 (6th Cir. 2007). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." Henderson, 431 U.S. at 155. State law instructional errors rarely form the basis for federal habeas relief. Estelle, 502 U.S. at 71-72; Rashad v. Lafler, 675 F.3d 564,

569 (6th Cir. 2012).

The Michigan Court of Appeals considered this claim on direct

appeal on plain error review and denied relief.  The court explained in

relevant part:

> Defendant contends that the trial court improperly included
> coercive language in its reading of a supplemental jury
> instruction regarding deadlocked juries. The jury instruction at
> issue provides:
>
>> (1) You have returned from deliberations, indicating
>> that you believe you cannot reach a verdict. I am
>> going to ask you to please return to the jury room
>> and resume your deliberations in the hope that after
>> further discussion you will be able to reach a
>> verdict. As you deliberate, please keep in mind the
>> guidelines I gave you earlier.
>>
>> (2) Remember, it is your duty to consult with your
>> fellow jurors and try to reach agreement, if you can
>> do so without violating your own judgment. To
>> return a verdict, you must all agree, and the verdict
>> must represent the judgment of each of you.
>>
>> (3) As you deliberate, you should carefully and
>> seriously consider the views of your fellow jurors.
>> Talk things over in a spirit of fairness and
>> frankness.
>>
>> (4) Naturally, there will be differences of opinion.
>> You should each not only express your opinion but
>> also give the facts and the reasons on which you
>> base it. By reasoning the matter out, jurors can
>> often reach agreement.

(5) If you think it would be helpful, you may submit to the bailiff a written list of the issues that are dividing or confusing you. It will then be submitted to me. I will attempt to clarify or amplify the instructions in order to assist you in your further deliberations.

(6) When you continue your deliberations, do not hesitate to rethink your own views and change your opinion if you decide it was wrong.

(7) However, none of you should give up your honest beliefs about the weight or effect of the evidence only because of what your fellow jurors think or only for the sake of reaching agreement. [M Crim JI 3.12.]

When the jury first informed the trial court that it could not reach a verdict, the trial court read the jury instruction on deadlocked juries verbatim. However, when the jury informed the trial court the next day that it still could not reach a verdict, the trial court deviated slightly from the standard instruction, stating:

I really need you to go back and re-go over everything you've got. Maybe look at the exhibits again. Look at your notes again. Discuss the testimony again. This case is very important to both sides and it's really important that, if at all possible, the matter does get resolved by this trial as opposed to another. Remember, it's your duty, again, to consult with each other, to try and reach agreement as long as you can do so without giving up your own judgment. To return a verdict, you must all agree. It must represent the individual judgment of each of you. As you deliberate you should carefully and seriously consider the views of your fellow jurors. Talk things over in the spirit of

fairness and frankness. Naturally, there are going to be differences of opinion. You should each not only express your opinion, but give the facts and the reasons on which you base it ...

\* \* \*

When you continue deliberations do not hesitate to re-think your own views and change your opinions if you're wrong. None of you should give up your honest opinion, I'm not asking that. I'm just asking you to carefully consider everyone else's and see if you can find merit or maybe point out where the merit might be lacking, and maybe the other person will change their mind. But don't give up your own opinion just for the sake of reaching a verdict. But it is very important that you spend some extra time to try and reach agreement and see what you can agree upon. I know sometimes the makeup of the jury could switch. I had a jury switch up the foreperson. I don't know, unfortunately, I have not sat on a jury before so I'm not really sure how it's working in there, but just other things to consider as well. This is really important to both sides and we ask that you please go back and reconsider and maybe look everything over maybe in a different light.

On the third day, the trial court again read the standard deadlock jury instruction to the jury verbatim, and defendant does not raise any issues related to that reading of the standard jury instruction. However, with regard to the non-standard deadlock jury instruction read to the jury on the second day of trial, defendant argues that the trial court's repeated assertions that it was "really important" and "very important" for the jury to reach a verdict constituted a substantial departure from M Crim JI 3.12, and that these comments coerced the jury into rendering a verdict.

The Michigan Supreme Court has previously held that "'[a]ny

-13-

substantial departure'" from the text of a jury instruction as adopted by the American Bar Association (ABA) can constitute grounds for finding that the trial court committed error requiring reversal. People v. Pollick, 448 Mich. 376, 382; 531 N.W.2d 159 (1995) (citation omitted). A jury instruction is considered to have substantially departed from the standard text if the trial court's verbal departure could "cause a juror to abandon his conscientious dissent and defer to the majority solely for the sake of reaching agreement[.]" Id. at 384. An example of a jury instruction on deadlock that departs from the standard instruction to the extent that reversal is required is one "that calls for the jury, as part of its civic duty, to reach a unanimous verdict and which contains the message that the failure to reach a verdict constitutes a failure of purpose ...." Id. at 385. Typically, "'[t]he optimal instruction will generate discussion directed towards the resolution of the case but will avoid forcing a decision.'" Id. at 384 (citation omitted).

When taken in context, the trial court's reading of the non-standard jury instruction did not substantially depart from the text of M Crim JI 3.12 to the extent that reversal is necessary. The trial court read M Crim JI 3.12 in its entirety to the jury twice, including language that instructed the jurors to consult with each other and carefully consider each other's opinions. The trial court also instructed the jurors that none of them should abandon their opinion "for the sake of reaching a verdict," which negates defendant's claim that the trial court was coercing the jury into reaching a verdict. Additionally, at no point did the trial court suggest to the jury that the failure to reach a verdict would mean that the jurors had failed at their purpose. Id. at 385. The trial court also informed the jury each time it read the deadlock instruction that the jury was welcome to send a note asking for clarification of the facts or law of the case. The trial court did not directly or specifically demand that it reach a verdict, but rather asked the jury to continue to deliberate in an effort to resolve the case.

Overall, the trial court's non-standard jury instruction was

sufficient and did not result in error, despite the fact that it was not a verbatim reading of M Crim JI 3.12. The trial court's instruction was consistent with the text and spirit of the standard jury instruction. At no point did the trial court's comments contain the type of coercive language necessary to result in a reversal of defendant's convictions. The trial court's additional comments instructed the jury to make a concerted effort to reach a verdict, but also to encourage them to remain open-minded and engaged in the jury deliberations. Thus, the non-standard instruction as provided by the trial court did not constitute a substantial departure from the standard jury instruction.

Thompson, 2018 WL 6710597 at *2-3.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, to the extent that the petitioner asserts that the trial court erred in instructing the jury under Michigan law, he merely alleges a violation of state law which does not justify federal habeas relief.  See, e.g., Rashad v. Lafler, 675 F.3d 564, 569 (6th Cir. 2012) ("a state court's interpretation of the propriety of a jury instruction under state law does not entitle a habeas claimant to relief").  State courts are the final arbiters of state law and the federal courts will not intervene in such matters.  Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Oviedo v. Jago, 809 F.2d 326, 328 (6th Cir. 1987);  see also Bradshaw v. Richey, 546 U.S. 74, 76 (2005)  ("a state court's interpretation of state law, including one announced on direct appeal of the

challenged conviction, binds a federal court on habeas review"); Sanford v.

Yukins, 288 F.3d 855, 860 (6th Cir. 2002). Habeas relief does not lie for

perceived errors of state law. Estelle, 502 U.S. at 67-68.

Second, the petitioner fails to establish that the trial court's

deadlocked jury instructions rendered his trial fundamentally unfair. When

adjudicating a trial court's instruction to a deadlocked jury, a reviewing

court must determine whether "in its context and under all the

circumstances" the instruction had a "coercive effect" on the jury. Jenkins

v. United States, 380 U.S. 445, 446 (1965). The Sixth Circuit has further

explained:

> The Supreme Court has long maintained that a trial judge may
> properly encourage a deadlocked jury to continue deliberating
> by issuing a supplemental instruction that urges the jury to
> reach a unanimous verdict. Allen v. United States, 164 U.S.
> 492, 501–02, 17 S. Ct. 154, 41 L. Ed. 528 (1896). These
> so-called Allen charges serve the important purpose of
> avoiding the social costs of a retrial, including the time,
> expense, and potential loss of evidence that a new trial would
> entail. See Lowenfield v. Phelps, 484 U.S. 231, 237–38, 108 S.
> Ct. 546, 98 L. Ed.2d 568 (1988); id. at 252, 108 S. Ct. 546
> (Marshall, J., dissenting). This court has also generally upheld
> "verdict-urging" charges, even when they contain flaws, e.g.,
> Williams v. Parke, 741 F.2d 847, 850 (6th Cir.1984), and
> despite "troubling" references to trial expense and effort, e.g.,
> United States v. Clinton, 338 F.3d 483, 490 (6th Cir.2003).

Hardaway v. Robinson, 655 F.3d 445, 448 (6th Cir. 2011).

In this case, the trial court's deadlocked instructions, considered as a whole and in context, were not coercive.  The court gave the jury the Michigan standard deadlocked jury instruction twice and instructed the jurors to consult with each other to reach a verdict "as long as you can do so without giving up your own judgment."  While the court emphasized that reaching a verdict was "really important," the court neither stated nor implied that the jurors should abandon their opinions to reach a verdict or that the failure to do so would mean that they had failed in their duty.  The court did not demand that the jurors reach a verdict, but rather asked them to review the case, consider each others' views, and continue deliberations.  The trial court's deadlocked jury instructions, as whole, were consistent with due process and not coercive.  The petitioner fails to show that the jury instructions rendered his trial fundamentally unfair.  Habeas relief is not warranted on this claim.

## 2.    Ineffective Assistance of Counsel Claim

The petitioner next asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to object to the deadlocked jury instructions given by the trial court.  The respondent contends that this claim lacks merit.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel.  In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient.  This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment.  Strickland, 466 U.S. at 687.  Second, a petitioner must establish that counsel's deficient performance prejudiced the defense.  Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal.  Id.

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance."  Id. at 690.  The reviewing court's scrutiny of counsel's performance is highly deferential.  Id. at 689.  There is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  Id. at 690.  The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. Id. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performances. "The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Harrington, 562 U.S. at 105 (citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

The Michigan Court of Appeals considered this claim on appeal,

applied the Strickland standard, and denied relief.  The court explained in

relevant part:

> As previously discussed, defendant failed to show that the trial
> court erred by reading a non-standard deadlock jury instruction
> that also included commentary outside of the verbatim text of
> the standard jury instruction, M Crim JI 3.12. The non-standard
> jury instruction was not coercive, and the trial court did not
> substantially depart from the standard jury instruction under M
> Crim JI 3.12. Nevertheless, this Court observes that "a failure
> to satisfy the plain-error test will not, without more, foreclose a
> defendant's claim of ineffective assistance of trial counsel."
> People v. Randolph, 502 Mich. 1, 5; 917 N.W.2d 249 (2018).
> Defendant has failed to demonstrate that defense counsel was
> required to object to the trial court's reading of the deadlock
> jury instruction because he has failed to properly establish that
> the trial court's reading of the instruction substantially departed
> from the text of M Crim JI 3.12. Consequently, it cannot be
> argued that defense counsel's performance fell below an
> objective standard of reasonableness. Since the trial court's
> reading of the deadlock jury instruction did not substantially
> depart from the standard text of M Crim JI 3.12, defendant
> cannot properly show that the outcome of the case would have
> been different if defense counsel had objected. "Failing to
> advance a meritless argument or raise a futile objection does
> not constitute ineffective assistance of counsel." People v.
> Ericksen, 288 Mich. App. 192, 201; 793 N.W.2d 120 (2010).
> Accordingly, defendant has failed to show that he was denied
> the effective assistance of counsel.

Thompson, 2018 WL 6710597 at *4.

The state court's decision is neither contrary to Supreme Court

precedent nor an unreasonable application of federal law or the facts.  The

petitioner fails to establish that trial counsel erred and/or that he was prejudiced by counsel's conduct.  First, counsel may have reasonably decided not to object to the trial court's instructions because they substantially complied with the standard instructions and adequately advised the jury of their duties in the face of deadlock.  The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective.  See Moss v. Hofbauer, 286 F.3d 851, 859 (6th Cir. 2002) ("an ineffective assistance of counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken").  Second, given the Michigan Court of Appeals' decision and this court's determination that the underlying claim lacks merit, the petitioner cannot establish that trial counsel erred and/or that he was prejudiced by counsel's conduct.  Trial counsel cannot be deemed ineffective for failing to make a futile or meritless objection or argument. Tackett v. Trierweiler, 956 F.3d 358, 375 (6th Cir. 2020); Hoffner v. Bradshaw, 622 F.3d 487, 499 (6th Cir. 2010).  The petitioner fails to show that trial counsel was ineffective.  Habeas relief is not warranted on this claim.

### 3.    Prosecutorial Misconduct Claim

Lastly, the petitioner asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct during closing arguments by interjecting her own experience and suggesting that a guilty verdict would help the victim heal from the sexual assaults.  The respondent contends that this claim is procedurally defaulted and that it lacks merit.

The Supreme Court has made clear that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." Berger v. United States, 295 U.S. 78, 88 (1935).  To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974); see also Darden v. Wainwright, 477 U.S. 168, 181 (1986) (citing Donnelly); Parker v. Matthews, 567 U.S. 37, 45 (2012) (confirming that Donnelly/Darden is the proper standard).

The Michigan Court of Appeals considered this claim on direct appeal on plain error review and denied relief.  The court explained in relevant part:

> Defendant cites to an excerpt from the prosecutor's closing argument, in which the prosecutor stated as follows:

-22-

Ms. Hengeveld [the prosecution]: I have been a prosecutor for almost 14 years and in the last few years these are the only kinds of cases that I prosecute.

Ms. Erwin [defense counsel]: Objection, your honor. Moving into something personal.

The Court: Well, we don't know where she's going, but I'll caution you. Go ahead.

Ms. Hengeveld: Whether it's this kind of case or whether it's other cases that I prosecute, I have determined that in every case a victim loses something, whether it's money, whether it's property, whether it is time healing from wounds, or a loved one.

These cases are different. In these cases the victim loses a sense of trust. They lose a sense of security. They lose a sense of themselves. These are not cases that happen where they can be witnessed by somebody. These are not the kinds of cases that are disclosed right away, and oftentimes they're not. These are the kind of cases that happen when no one is around to protect the victim. These are the kind of cases that happen between closed doors and behind closed doors, and they're done by the assailant in a way that discourages disclosure by the victim.

A guilty verdict by you will not return [the victim] to her former self. This is going to be with her forever. And seemingly, she might go along in life and be fine for awhile [sic], and all of a sudden she hits a wall and all of her experiences at the hands of the defendant are going to come back. So, you finding the defendant guilty isn't going to fix that for her, but

it will put her on the path to being able to heal and
move forward from this atrocious thing that has
happened to her as a seven-year-old little girl.

Defendant argues that the prosecutor used the prestige of her
office as a prosecutor to bolster her closing argument.
Defendant further argues that the prosecutor improperly
appealed to the jury's sympathies by arguing that a guilty
verdict would allow the victim to heal from the sexual assault.
Defendant correctly argues that a prosecutor may not
improperly invoke "the prestige of the office" or use "the
prestige of the prosecutor's office to inject personal opinion"
into an argument. People v. Matuszak, 263 Mich. App. 42, 55;
687 N.W.2d 342 (2004). Additionally, "a prosecutor may not
argue facts not in evidence or mischaracterize the evidence
presented," and "[a]ppeals to the jury to sympathize with the
victim constitute improper argument." People v. Watson, 245
Mich. App. 572, 588, 591; 629 N.W.2d 411 (2001).

When taken in context, the prosecutor's act of mentioning her
personal experience as a prosecutor immediately before a
series of generalizations about the nature of sexual assault
cases constitute impermissible prosecutorial conduct. The
prosecutor's discussion of sexual assault cases being
"different," from other types of cases, and her statement that
sexual assault victims lose "a sense of trust ... a sense of
security ... a sense of themselves," while perhaps true, were
ultimately based on the prosecutor's personal experience and
not facts in evidence. The prosecutor's remark that a guilty
verdict would "put [the victim] on the path to being able to heal
and move forward from this atrocious thing that has happened
to her" was also not a factual statement based on the evidence.
Further, this excerpt of the prosecutor's closing argument
paired an improper reference to the prosecutor's personal
experience with an improper appeal to the juror's sympathies,
and as such, constituted prosecutorial error.

However, this Court "will not find error requiring reversal if the

prejudicial effect of the prosecutor's comments could have been cured by a timely instruction." <u>People v. Williams</u>, 265 Mich. App. 68, 71; 692 N.W.2d 722 (2005). The prosecutor's comments were only one portion of an otherwise lengthy and factually based closing argument, and the trial court also instructed the jury that "[t]he lawyers' statements and arguments are not evidence. They're only meant to help you understand the evidence and each side's legal theories. You should only accept the things the lawyers say that are supported by the evidence ...." Any prejudicial effect of the prosecutor's statement was cured by the inclusion of this instruction. Additionally, defendant was convicted of two counts of CSC-I, but was acquitted of an additional two counts, which indicates that the jury weighed the evidence and made its own determination regarding defendant's guilt without considering the prosecutor's remarks during closing argument. Thus, although the statements made by the prosecutor may have constituted prosecutorial error, this Court should not reverse defendant's convictions and sentences because the potential prejudicial effect of the statements was cured by the trial court.

<u>Thompson</u>, 2018 WL 6710597 at *5-6.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. It is improper for a prosecutor to express his or her own personal opinions. <u>United States v. Young</u>, 470 U.S. 1, 9-10 (1985); <u>Hodge v. Hurley</u>, 426 F.3d 368, 378 (6th Cir. 2005). Such statements are improper because they can convey the impression that the prosecutor has evidence not presented to the jury which supports the charges against the defendant thereby infringing upon the defendant's right to be judged solely based

upon the evidence presented and because the prosecutor's opinion carries with it the imprimatur of the government and may induce the jury to trust the government's judgment rather than its own.  Young, 470 U.S. at 18-19; Cristini v. McKee, 526 F.3d 888, 901 (6th Cir. 2008); see also Wilson v. Bell, 368 F. App'x 627, 633 (6th Cir. 2010) (citing cases).  It is also well-settled that a prosecutor may not make remarks "calculated to incite the passions and prejudice of the jurors," United States v. Solivan, 937 F.2d 1146, 1151 (6th Cir. 1991), or to encourage them to decide a case based upon their feelings instead of the evidence.  Johnson v. Bell, 525 F.3d 488, 484 (6th Cir. 2008).

In this case, as discussed by the Michigan Court of Appeals, the prosecutor's remarks about her personal experience and the possible effect of the jury's verdict on the victim's mental health were arguably improper.  The petitioner, however, fails to show that any such improper remarks were so extensive or misleading as to render his trial fundamentally unfair.  To be sure, the record indicates that the jurors extensively reviewed and deliberated the case given their deadlock and given that they acquitted the petitioner on two additional counts of first-degree criminal sexual conduct.

Furthermore, any potential prejudice to the petitioner was mitigated by the fact that the trial court properly instructed the jurors on the elements of the charged crimes, explained that the attorneys' arguments were not evidence, and directed them to evaluate the credibility of witnesses and decide the case based solely on the evidence.  See, e.g., Hamblin v. Mitchell, 354 F.3d 482, 495 (6th Cir. 2003); Knapp v. White, 296 F. Supp. 2d 766, 776 (E.D. Mich. 2003).  Jurors are presumed to follow the court's instructions.  Penry v. Johnson, 532 U.S. 782, 799 (2001) (citing Richardson v. Marsh, 481 U.S. 200, 211 (1987)); United States v. Powell, 469 U.S. 57, 66 (1984) ("Jurors ... take an oath to follow the law as charged, and they are expected to follow it.").  The petitioner fails to establish that the prosecutor engaged in misconduct which rendered his trial fundamentally unfair.[1]  Habeas relief is not warranted on this claim.

---

[1] The petitioner also mentions that trial counsel was ineffective for failing to object to the prosecutor's remarks, but does not raise this issue as a distinct claim.  Even assuming that trial counsel erred by failing to object to those remarks, the petitioner fails to show that he was prejudiced by counsel's conduct.  As discussed, the prosecutor's alleged improper remarks did not affect the fundamental fairness of the trial and any potential prejudice was mitigated by the trial court's jury instructions.  The petitioner fails to show that trial counsel was ineffective under the Strickland standard.

## V.    Conclusion

For the reasons stated, the court concludes that the petitioner is not entitled to federal habeas relief on his claims.  Accordingly, the court **DENIES** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before the petitioner may appeal the court's decision, a certificate of appealability must issue.  See 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A certificate of appealability may issue only if the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong.  Slack v. McDaniel, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).  The petitioner makes no such showing.  Accordingly, the court **DENIES** a certificate of appealability.

Lastly, the court concludes that an appeal from this decision cannot

be taken in good faith.  <u>See</u> Fed. R. App. P. 24(a).  Accordingly, the court

**DENIES** leave to proceed in forma pauperis on appeal.

   **IT IS SO ORDERED**.

Dated: July 25, 2022

       <u>s/George Caram Steeh</u>   
       GEORGE CARAM STEEH
       UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
July 25, 2022, by electronic and/or ordinary mail.

<u>s/Brianna Sauve</u>
Deputy Clerk

---